UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD LANE,

        Plaintiff,                                   Hon. Ellen S. Carmody

v.                                                   Case No. 1:05 CV 131

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On May 23, 2005, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred the matter to this Court. (Dkt. #11).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age on the date of the ALJ's decision. (Tr. 31). He successfully completed high school and worked previously as a forklift driver and court clerk. (Tr. 31, 85, 90, 98-104).

Plaintiff applied for benefits on October 18, 2000, alleging that he had been disabled since May 8, 2000, due to lower back pain. (Tr. 70-72, 84, 300-02). Plaintiff's application was denied, after which time he requested a hearing before an ALJ. (Tr. 54-69, 303-59). On February 5, 2003, Plaintiff appeared before ALJ Alan Diodore, with testimony being offered by Plaintiff and vocational expert, John Petrovich. (Tr. 527-51). In a written decision dated March 28, 2003, the ALJ determined that while Plaintiff was disabled from May 8, 2000, through December 20, 2001, he was not disabled thereafter. (Tr. 30-40). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 7-11). Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On May 8, 2000, Plaintiff was driving a hi-lo when he "round[ed] a corner and came over the top of a piece of lumber that was laying in his traffic lane." (Tr. 121). Plaintiff struck his head on one of the hi-lo's overhead protective bars, sustaining a 10 centimeter long "laceration over

3

the posterior parietal occipital area of the scalp." Plaintiff was taken to an occupational medicine clinic where he was examined by Dr. Robert Richmond. Plaintiff exhibited full and active range of neck motion and his extraocular movements were within normal limits. The results of a neurological examination were within normal limits and x-rays of Plaintiff's skull and cervical spine were negative. Plaintiff's wound was cleaned and sutured. *Id.*

On May 22, 2000, Plaintiff was examined by Dr. Richmond. (Tr. 119). Plaintiff reported that he was experiencing pain in his neck and lower back. Plaintiff was in no apparent distress and he exhibited full and active range of motion in his neck and lower back. The doctor observed no evidence of back spasm or tenderness to palpation across Plaintiff's lower back. Plaintiff also exhibited normal posture and full internal and external rotation of his hip joints. *Id.*

On May 25, 2000, Plaintiff was examined by Dr. Sam Ho. (Tr. 170-71). Plaintiff reported that he was experiencing neck and back pain, as well as headaches. (Tr. 170). Plaintiff reported that his neck pain ranged from 4 to 7 (on a scale of 1-10) and that his back pain ranged from 4-10 (on a scale of 1-10). He reported, however, that his pain was "reduced with increased activity." *Id.* The results of a physical examination were unremarkable. (Tr. 171). Dr. Ho concluded that Plaintiff could return to work subject to the following limitations: (1) no lifting more than 10 pounds, (2) no repetitive bending or twisting, and (3) a sit/stand option. The doctor also instructed Plaintiff to participate in physical therapy and maintain a "regular exercise program." *Id.*

On June 29, 2000, Plaintiff was examined by Dr. Ho. (Tr. 168). Plaintiff reported that physical therapy has been "helpful." The results of the examination were unremarkable. The doctor modified Plaintiff's work restrictions to (1) no lifting more than 30 pounds, (2) no repetitive bending or twisting, and (3) a sit/stand option. *Id.*

On August 1, 2000, Plaintiff was examined by Dr. Ho. (Tr. 165-66). Plaintiff reported that he was experiencing headaches, back pain, and right knee pain. (Tr. 165). Plaintiff reported that his knee pain ranged from 3-10 (on a scale of 1-10) and his back pain ranged from 3-7 (on a scale of 1-10). An examination of Plaintiff's right knee revealed a "very mild degree" of edema, with no evidence of laxity or instability. *Id.* The doctor concluded that Plaintiff's knee pain was the result of degenerative changes, rather than a discreet injury. (Tr. 166). An examination of Plaintiff's back revealed no evidence of radicular symptoms and an examination of Plaintiff's cranial nerves "again noted no deficits." (Tr. 165).

On August 8, 2000, Plaintiff participated in a CT scan of his head, the results of which were "normal." (Tr. 173). Plaintiff also participated in a CT scan of his lumbar spine, the results of which revealed a central disc bulge without evidence of stenosis or nerve root impingement. (Tr. 172).

On August 10, 2000, Plaintiff was examined by Dr. Ho. (Tr. 163-64). Plaintiff reported that his back pain "has improved approximately 80%." (Tr. 163). Plaintiff characterized his back pain as "a localized 'ache' sensation with no radiating nature." Straight leg raising was negative and Plaintiff performed range of motion activities "quite freely." Plaintiff rated his headache pain as 6 (on a scale of 1-10), but noted that Motrin helped relieve his headaches. *Id.* Dr. Ho reported that there was no evidence of abnormality related to Plaintiff's headaches. (Tr. 164). The doctor further instructed Plaintiff that "the pain he describes in his scalp is not unusual for a laceration." Dr. Ho concluded that Plaintiff could perform work activities subject to the following limitations: (1) no lifting more than 30 pounds, (2) no repetitive bending or twisting, and (3) a sit/stand option. *Id.*

5

On August 28, 2000, Plaintiff was examined by Dr. Ho. (Tr. 161-62). Plaintiff reported that he was experiencing back pain which ranged from 3-10 (on a scale of 1-10). (Tr. 161). An examination of Plaintiff's back and extremities was unremarkable and the doctor observed no evidence of radiculopathy, muscle weakness, or sensory deficit. (Tr. 161-62). Dr. Ho reported that Plaintiff was experiencing the effects of degenerative changes to his back. (Tr. 162). The doctor discharged Plaintiff from therapy, concluding that Plaintiff was able to perform work duties, subject only to the restriction that he perform "no lifting from the floor." (Tr. 126).

On September 8, 2000, Plaintiff was examined by Dr. Russo. (Tr. 147-49). Plaintiff reported that his neck pain "has improved" and that his back pain was "slowly getting better." (Tr. 147). Plaintiff reported that he was also experiencing right knee pain. *Id.* Plaintiff walked with a "normal gait pattern" and he was able to heel/toe walk "without evidence of weakness." (Tr. 148). Plaintiff exhibited a full range of motion in his hips and lower back. The results of neurological testing were unremarkable and the doctor observed no evidence of muscular weakness. Dr. Russo concluded that Plaintiff's symptoms were consistent with "a mechanical discomfort without evidence of radicular component." *Id.* The doctor further stated that there existed no evidence of "any significantly objective findings." (Tr. 149). Dr. Russo concluded that Plaintiff could return to work, so long as he not drive a hi-lo or forklift. *Id.*

On September 27, 2000, Plaintiff participated in a CT scan of his lumbar spine the results of which revealed: (1) a "moderate" disc bulge at L4-5 without evidence of stenosis or herniation and (2) evidence of facet joint arthritis at L5-S1 without evidence of nerve root impingement. (Tr. 156). Plaintiff also participated in a lumbar myelogram examination, the results of which revealed no evidence of nerve root compression. (Tr. 157).

6

On September 29, 2000, Plaintiff was examined by Dr. Ho. (Tr. 159-60). Plaintiff reported that he was experiencing back pain which ranged from 4-7 (on a scale of 1-10). (Tr. 159). Straight leg raising was negative and Plaintiff was able to squat and recover and heel/toe walk without difficulty. Plaintiff performed range of motion activities "freely" without "significant discomfort." *Id.* Plaintiff participated in an EMG study of his lower spine and right lower extremity, the results of which revealed facet arthritis at L5-S1, but were otherwise unremarkable. (Tr. 160). Specifically, Dr. Ho reported that Plaintiff's pain was "superficial" and muscular in origin. The doctor concluded that Plaintiff could perform work activities without limitation. *Id.*

On November 6, 2000, Plaintiff participated in a consultive examination performed by Dr. Roger Lemmen. (Tr. 174-81). Plaintiff reported that he was experiencing headaches and pain in his neck, shoulder, lower back, and right lower extremity. (Tr. 174). Plaintiff reported that he did not always perform his prescribed exercises, but did ride his bicycle. (Tr. 176). An examination of Plaintiff's back revealed "moderate" tenderness of the right SI joint, but was otherwise unremarkable. (Tr. 177-78). An examination of Plaintiff's head revealed "some" tenderness, but was otherwise unremarkable. (Tr. 178). Dr. Lemmen concluded that Plaintiff "is really doing quite well without significant abnormality." (Tr. 180). The doctor further concluded that Plaintiff could perform work activities subject to the following restrictions: (1) no lifting more than 20 pounds, (2) minimal bending and twisting, and (3) avoid bouncing and vibration type activities. *Id.*

In November 2000, Plaintiff was diagnosed with diabetes. (Tr. 226, 229). Treatment notes dated December 14, 2000, reveal that Plaintiff's diabetes was "improving" with medication. (Tr. 219).

On April 2, 2001, Plaintiff was examined by Dr. Andrew Daugavietis. (Tr. 298-99). Plaintiff reported that he was experiencing lower back pain which radiated down his right leg. (Tr. 298). The examination revealed soreness in Plaintiff's right lower lumbar spine area. (Tr. 299). The doctor concluded that Plaintiff suffered from low back pain. *Id.* On April 27, 2001, Dr. John Johnson provided Plaintiff with a TENS unit to treat his back pain. (Tr. 297).

On April 30, 2001, Plaintiff was examined by nurse practitioner, Robert Lidestri. (Tr. 296). Plaintiff reported that he was experiencing depression and insomnia. The results of a mental status examination were unremarkable. Plaintiff was diagnosed with an adjustment disorder with depressed mood, for which he was prescribed Prozac (as well as a sleep aid) and instructed to participate in therapy. *Id.*

On June 1, 2001, Plaintiff was examined by Mr. Lidestri. (Tr. 292). Plaintiff reported that his sleep medication helped him sleep, but that he refused to take Prozac. The results of a mental status examination were unremarkable. Mr. Lidestri prescribed a different medication to treat Plaintiff's depression. *Id.*

On July 30, 2001, Plaintiff was examined by Mr. Lidestri. (Tr. 287). Plaintiff reported that his medication was "partially effective" in treating his depression. Plaintiff also reported that he was consuming "about one half-pint of gin every other day and also some beer." The results of a mental status examination were unremarkable. Plaintiff was instructed to discontinue his alcohol consumption, take his medications as directed, and increase his level of activity. *Id.*

On October 25, 2001, Plaintiff reported that his back was feeling "better." (Tr. 273). On November 29, 2001, Plaintiff reported that his back pain was "considerably better" since receiving an injection and different medication. (Tr. 413).

On December 20, 2001, Plaintiff was examined by Dr. Cho. (Tr. 410-11). Plaintiff reported that his back pain had improved with injection therapy. (Tr. 410). Plaintiff exhibited "near full" range of spinal motion and the doctor observed that Plaintiff was experiencing only "minimal" discomfort with no evidence of sensory abnormality. (Tr. 410-11). Plaintiff further exhibited "normal strength and gait." (Tr. 410). Dr. Cho also completed a physical capacities assessment regarding Plaintiff's ability to perform work activities. (Tr. 394). The doctor reported that Plaintiff can "frequently" (defined as "continuously up to 8 hrs. with breaks") sit, stand, and walk. The doctor reported that Plaintiff can "sometimes" (defined as "continuously up to 2 hrs. or occasionally up to 6 hrs") lift up to 30 pounds, bend, squat, crawl, kneel, reach over shoulder height, grasp, push, pull, and climb stairs. Dr. Cho further reported that Plaintiff's condition was "stable." *Id.*

On January 11, 2002, Dr. Johnson reported that while Plaintiff was unable to work immediately following his May 8, 2000 injury, his condition improved sufficient for him to return to work as of December 20, 2001. (Tr. 395). The doctor reported that Plaintiff was presently able to perform work activities so long as he not lift more than 30 pounds. *Id.*

On April 3, 2002, Plaintiff reported that his depression was "better." (Tr. 405).

At the administrative hearing Plaintiff testified that he continues to experience back pain. (Tr. 545). Plaintiff testified that his back pain ranges from 7-11 (on a scale of 1-10). *Id.* He also reported that he can lift 20 pounds, walk approximately one block, stand for 60-90 minutes, and

9

sit for 60-90 minutes. (Tr. 544-45). With respect to his depression, Plaintiff testified that he visits with a counselor every three months. (Tr. 539).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations provide a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

In his decision denying Plaintiff's claim for benefits, the ALJ determined that Plaintiff suffers from the following severe impairments: (1) diabetes, (2) a disorder of the back, and (3)

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

depression. (Tr. 32). The ALJ determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 32-40). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that as of December 20, 2001, Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift/carry 10 pounds occasionally, (2) he can perform only simple, routine activities, (3) he can

sit, stand, and walk at least six hours each during an 8-hour workday, (4) he requires a sit-stand option, and (5) he cannot work around unprotected heights. (Tr. 39).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and has never experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 34). Accordingly, the ALJ concluded that Plaintiff was capable of performing simple, routine work activities. *Id.* After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert John Petrovich.

The vocational expert testified that there existed more than 63,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 548-49). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that "the ALJ did not have substantial evidence to support his finding that Plaintiff could have performed sedentary work after his closed period of benefits." The Court disagrees. The medical evidence detailed above reveals that while Plaintiff may have been unable to perform work activities immediately following his May 8, 2000 accident, his condition improved with treatment. As Plaintiff's treating physicians (Dr. Ho and Dr. Johnson) concluded, Plaintiff regained the ability to perform full-time work activities no later than December 20, 2001. This conclusion is amply supported by the medical evidence. Furthermore, none of Plaintiff's treaters have expressed an opinion contrary to this conclusion.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed more than 63,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

### c. Plaintiff is not Entitled to a Remand to Consider Additional Evidence

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 450-93). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 7-11). This Court, however, is precluded from considering such material. In *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Sec'y of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Much of this additional material consists merely of copies of medical records which the ALJ considered. The remaining material contains nothing which would suggest that Plaintiff's condition deteriorated following the ALJ's decision or that the ALJ's decision was in any respect infirm. Specifically, this material reveals that Plaintiff's depression was adequately treated with medication. (Tr. 450, 479-81). With respect to Plaintiff's diabetes, this additional material reveals that while Plaintiff experienced difficulty controlling his blood sugars, he was non-compliant with his doctors' instructions. (Tr. 452-56, 477). As for Plaintiff's back impairment, this additional evidence is consistent with that detailed above. (Tr. 455). In sum, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: March 9, 2006         /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge